**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BRITTANY DAVE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**1661, INC., d/b/a GOAT GROUP, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 26-01043 (ES) (ADS)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants 1661, Inc. d/b/a GOAT Group ("GOAT Group"), Rodney Clowers, Lauren Chun, and Tiffany Bleu-Garcia's (collectively "Defendants")[1] Motion to Compel Arbitration and Dismiss Plaintiff Brittany Dave's ("Plaintiff") Complaint, (D.E. No. 1 at 5–24 (ECF Pagination) ("Compl." or "Complaint")[2]). (D.E. No. 7 ("Mot." or "Motion")). The Court has carefully considered the parties' submissions in connection with the Motion, as well as the balance of the record, and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' Motion to Compel Arbitration and Dismiss Plaintiff's Complaint is **DENIED**.

## I. BACKGROUND[3]

[1] Plaintiff also names "ABC Corporations 1-5" and "John Does 1-5" as Defendants. As Plaintiff has not included any factual allegations regarding any fictitiously pled defendant, the Court will focus its analysis on Plaintiff's allegations against the Defendants identified herein.

[2] Docket Entry Number 1 is Defendants' Notice of Removal. Defendants included the Complaint as "Exhibit A" to its Notice of Removal. (D.E. No. 1 at 5–24 (ECF Pagination)). Defendants filed their Notice of Removal and Exhibit A as a single docket entry, however. Therefore, when referring to the Complaint, the Court refers to only Exhibit A of Docket Entry Number 1.

[3] For purposes of this Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

This action arises out of an employment dispute wherein Plaintiff alleges Defendant GOAT Group unlawfully terminated her employment due to pregnancy-based discrimination. (*See generally* Compl.). Plaintiff alleges that she began her employment with Defendant GOAT Group as an Operations Quality Performance Manager on or about May 15, 2022. (*Id.* ¶ 14).

On or about March 17, 2025, Plaintiff disclosed her pregnancy to Human Resources via email and her intent to take maternity leave starting May 20, 2025. (*Id.* ¶ 19). She took "approved temporary disability leave from approximately May 20, 2025 through August 1, 2025" and then took "FMLA leave from approximately August 2, 2025 through October 24, 2025." (*Id.* ¶ 20).

Upon her return from maternity leave on October 27, 2025, Plaintiff alleges she was "unexpectedly terminated during a Google Meet call with her manager, Defendant Clowers, and Defendant Garcia" and was informed that her position had been eliminated due to "downsizing." (*Id.* ¶¶ 22–23). Despite this, Plaintiff alleges that her "direct counterpart, a younger, childless employee holding the same title and performing the same duties, was retained during and after the purported restructuring." (*Id.* ¶ 26).

Plaintiff also claims that, throughout her employment with GOAT Group, she "observed a persistent and troubling pattern in which male employees received higher base salaries, larger merit increases, and greater total compensation than similarly situated female employees, including herself." (*Id.* ¶ 34). She alleges that, upon discovering the pay disparity within the company, she reported it to Human Resources on multiple occasions. (*Id.* ¶¶ 35–36). She further alleges that Defendant GOAT Group "failed to meaningfully investigate or address Plaintiff's gender-based pay inequity complaints." (*Id.* ¶ 37).

GOAT Group contends that, as part of its typical onboarding procedures, it furnished Plaintiff with a Mutual Agreement to Arbitrate Claims (the "Arbitration Agreement"), which

Plaintiff allegedly executed via Docusign on May 4, 2022. (D.E. No. 7-1 ("Mov. Br."); D.E. No. 7-2 Ex. 2 ("Arb. Agr.")).[4] The Arbitration Agreement states the following in relevant part:

> In exchange for the mutual promises contained in this Agreement, and in consideration of the Company employing Employee and Employee's acceptance of at-will employment with the Company, the Parties mutually agree to submit to binding arbitration any and all disputes, claims or controversies arising out of or relating to this Agreement (except as otherwise provided in this Agreement) or the employment relationship between the Parties, including Employee's application, hire, employment or termination, except as to those claims excluded herein.
>
> . . . .
>
> The Parties understand and fully agree that by entering into this Agreement to arbitrate, they are giving up their constitutional right to have a trial by jury and are giving up their normal rights of appeal following the rendering of a decision except as applicable state law provides for judicial review of arbitration proceedings. The Parties anticipate that by entering into this Agreement, they will gain the benefits of a speedy and less expensive dispute resolution procedure.
>
> . . . .
>
> BY SIGNING THIS AGREEMENT, EMPLOYEE REPRESENTS THAT THEY HAVE BEEN GIVEN THE OPPORTUNITY TO FULLY REVIEW AND COMPREHEND, THE TERMS OF THIS AGREEMENT, AND HEREBY WAIVE THEIR RIGHT TO HAVE ANY DISPUTE, CLAIM OR CONTROVERSY DECIDED BY A JUDGE OR JURY, EXCEPT FOR THOSE CLAIMS SPECIFICALLY EXCLUDED HEREIN.

(Arb. Agr. at 1, 3, 6).

The Arbitration Agreement describes the types of claims it covers, which include, but are

---

[4] In addition to the pleadings and those documents attached to the pleadings, the Court considers documents attached as exhibits to Defendants' motion to dismiss. *See Moore v. Beers*, 121 F. Supp. 3d 425, 430 (D.N.J. 2015) ("[A] court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice" except where there is "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993))). Plaintiff has not challenged the authenticity of Defendants' exhibits to their motion to dismiss, or the existence of the Arbitration Agreement. (*See generally* D.E. No. 8 ("Opp. Br.")). Rather, as described herein, Plaintiff argues that federal law bars enforcement of the Arbitration Agreement under the circumstances of this case. (*Id.*).

not limited to:

> claims for: wrongful termination, constructive discharge, or any adverse employment action . . . discrimination or harassment, including but not limited to discrimination or harassment based on . . . sex (including pregnancy, childbirth, breastfeeding or related medical conditions), gender, gender identity, gender expression, gender dysphoria, age, sexual orientation . . . or any other legally recognized protected basis under federal, state or local laws, regulations or ordinances . . . and claims for violation of any federal, state, or other governmental law, common law, constitution, statute, regulation or ordinance . . . .

(*Id.* at 1–2). Pursuant to the Arbitration Agreement, an employee could opt out if they provided the specified notice within thirty calendar days of receipt of the Arbitration Agreement. (*Id.*). Plaintiff's Complaint makes no mention of the Arbitration Agreement.

On December 4, 2025, Plaintiff initiated this action in the Superior Court of New Jersey, Law Division, Hudson County. (*See generally* Compl.). In the Complaint, Plaintiff asserted the following causes of action: disparate treatment and wrongful termination due to her pregnancy and/or gender, Count I, (*Id.* ¶¶ 43–61); retaliation and improper reprisal under the New Jersey Law Against Discrimination (the "NJLAD"), Count II, (*Id.* ¶¶ 62–71); and pay discrimination based on sex and/or gender in violation of the NJLAD, Count III, (*Id.* ¶¶ 72–79).

On February 3, 2026, Defendants removed the action to federal court. (D.E. No. 1). Subsequently, Defendants filed this motion to compel arbitration and dismiss Plaintiff's Complaint on February 24, 2026. (*See generally* Mov. Br.). Plaintiff filed an opposition brief on March 23, 2026, (*see* Opp. Br.), and Defendants filed a reply on March 30, 2026, (*see* D.E. No. 9 ("Reply Br.")). The motion is now ripe for disposition.

## II. LEGAL STANDARD

"Before compelling a party to arbitrate pursuant to the [Federal Arbitration Act (the "FAA")], a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at

issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). A court is required to order that the parties proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue[.]" 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that [it] do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). "When the very existence of . . . an [arbitration] agreement is disputed, a district court is correct to refuse to compel arbitration until it resolves the threshold question of whether the arbitration agreement exists." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 n.5 (3d Cir. 2013) (alteration in original) (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 112 (3d Cir. 2000)). Nevertheless, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## III. DISCUSSION

In their moving brief, Defendants assert that, on May 4, 2022, Plaintiff electronically signed and agreed to be bound by the Arbitration Agreement as a term and condition of her employment with Defendants. (Mov. Br. at 1). Thus, Defendants argue that this Court should dismiss this case because the Arbitration Agreement prohibits Plaintiff from pursuing her claims in this Court. (*See generally id.*). In opposition, Plaintiff does not make any allegations endorsing the existence of the Arbitration Agreement nor does she deny its existence. Plaintiff instead claims that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "EFAA"), 9 U.S.C. §§ 401–02, nullifies any applicable arbitration agreement because the claims pled constitute claims that would fall within the EFAA's protection. (Opp. Br. at 5–14). The Court addresses the enforceability of the Arbitration Agreement by first determining whether

Plaintiff's claims would fall within the scope of the EFAA and then addressing whether this Court may compel arbitration of those claims.[5]

**A. EFAA**

Enacted on March 3, 2022, "[t]he EFAA is codified directly into the FAA and limits the scope of this broad mandate to enforce arbitration agreements." *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 84 (2d Cir. 2024). As declared by Congress, the EFAA amended the FAA to provide:

> [n]otwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.[6]

9 U.S.C. § 402(a).

In the Complaint, Plaintiff alleges Defendants violated the NJLAD. (Compl. ¶¶ 43–79). The EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). To determine whether plaintiff has "alleg[ed] conduct constituting a sexual harassment dispute" pursuant to 9 U.S.C. § 402(a), courts apply "the familiar Rule 12(b)(6) standard to evaluate whether a plaintiff has sufficiently plead a claim under the law allegedly violated." *Michael v. Bravo Brio Rests. LLC*, No. 23-3691, 2024 WL 2923591, at *4 (D.N.J. June 10, 2024); *see Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240 (3d Cir.), *cert. denied*, 146 S. Ct. 193 (2025).

---

[5] Because the Court dismisses Defendants' Motion pending further discovery, it does not reach whether Defendants are entitled to an award of attorney's fees.

[6] Notably, if a lawsuit relates to a sexual assault or sexual harassment dispute, the EFAA renders unenforceable an arbitration agreement "'with respect to' that entire 'case.'" *McDermott v. Guaranteed Rate, Inc.*, No. A-0921-24, 2025 WL 3730563, at *12 (N.J. Super. Ct. App. Div. Dec. 26, 2025) (citing *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 558 (S.D.N.Y. 2023) ("Th[e] text [of 9 U.S.C. § 402(a)] is clear, unambiguous, and decisive as to the issue here. It keys the scope of the invalidation of the arbitration clause to the entire 'case' relating to the sexual harassment dispute.")).

Under Title VII, there are two recognized theories of sexual harassment: "quid pro quo harassment" and a "hostile work environment." *Michael*, 2024 WL 2923591, at *5 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

To establish a hostile work environment claim under the NJLAD, a plaintiff must show: (i) "she suffered intentional discrimination because of her protected class"; (ii) "the discrimination was severe or pervasive"; (iii) "the discrimination detrimentally affected the plaintiff"; and (iv) "the discrimination would detrimentally affect a reasonable person in like circumstances[.]" *Registre v. Trane Techs. PLC*, No. 25-11990, 2026 WL 905452, at *8 (D.N.J. Apr. 2, 2026); *see also Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 941 (3d Cir. 2009) ("New Jersey courts treat hostile work environment claims under the NJLAD the same as the Supreme Court treats hostile work environment actions under Title VII."). While a plaintiff must also demonstrate a fifth element—*respondeat superior*—to establish an employer's liability under Title VII, *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009), that requirement is not applicable to Plaintiff's NJLAD claim.

In *Cornelius*, the Third Circuit upheld this Court's grant of the defendant's motion to compel arbitration despite the plaintiff's claims that (i) she was targeted because of her gender through promotion and pay increase denials, (ii) comparable male employees received better treatment, (iii) she received disrespectful comments and was intentionally overworked, and (iv) the defendant ultimately terminated her employment. *Cornelius v. CVS Pharmacy, Inc.*, No. 23-01858, 2023 WL 6876925 (D.N.J. Oct. 18, 2023), *aff'd in part*, and *vacated on other grounds*, 133 F.4th 240 (2025). The Court identified the difference between sex-based discrimination claims and sexual harassment, stating "[s]ex discrimination is discriminating against someone because of his or her sex, while sexual harassment is unwelcome sexual advances or other verbal or physical

contact of a sexual nature." 2023 WL 6876925, at *3 (quoting *Friel v. Mnuchin*, 474 F. Supp. 3d 673, 692 (E.D. Pa. 2020)). This is not to say that the EFAA only applies in instances where the plaintiff was subject to unwelcome sexual advances, however. This Court has held that a plaintiff need not allege sexual advances or use the words "sexual harassment" in order for the EFAA to apply. *See Michael*, 2024 WL 2923591, at *4–6 (holding that the plaintiff's allegations of the slurs and comments she was subjected to in her workplace were severe or pervasive enough at the pleading stage to plausibly support a claim of sexual harassment such that the EFAA would apply).

However, it appears that no court within the Third Circuit has held that pregnancy-based discrimination claims amount to sexual harassment such that they are subject to the EFAA. *See Wiggins v. Netflix, Inc.*, No. 24-5643, 2026 WL 114377, at *4 (D.N.J. Jan. 14, 2026) (ordering further briefing from the parties as to whether the EFAA applies to plaintiff's claims, as they "raise[] questions of first impression"); *Carlton v. Nat'l Debt Relief LLC*, No. 26-00944, 2026 WL 1430099, at *3–4 (D.N.J. May 21, 2026) (finding that the EFAA did not apply to plaintiff's sex and pregnancy-based discrimination claims because her allegations did not amount to sexual harassment); *Foster v. Horizon Dental Care at Steamtown, Inc.*, No. 3:25-cv-01424, 2026 WL 353243, at *8–9 (M.D. Pa. Feb. 9, 2026) (determining that the plaintiff's claims fell outside the scope of the EFAA and finding that "the allegations in the complaint may give rise to claims of sex or pregnancy discrimination," but the plaintiff "fail[ed] to plausibly allege severe or pervasive sexual harassment"); *Moulds v. Skillcycle, Inc.*, No. 23-4873, 2024 WL 2206464, at *1 n.1 (E.D. Pa. Mar. 27, 2024) (granting the defendants' motion to compel arbitration and finding that plaintiff's claims do not fall within the scope of the EFAA by noting the distinction between sex discrimination and sexual harassment).

Defendant argues that Plaintiff's claims center entirely on pregnancy and gender

discrimination, rather than sexual harassment. (Mov. Br. at 16–17). This Court agrees. The facts, as alleged in Plaintiff's Complaint, do not indicate any form of sexual harassment that occurred. Indeed, Plaintiff asserts that she was terminated because of her pregnancy and that she took note of a pay disparity during her time employed at GOAT Group. (*See generally* Compl.). Without more, Plaintiff's claims do not rise to the level of sexual harassment. Plaintiff argues that despite not being "styled as 'sexual harassment,'" her claims still fall within the scope of the EFAA. (Opp. Br. at 9–10, 14). Nevertheless, Plaintiff's claims, as they are currently pled, are not severe or pervasive enough that this Court could apply the EFAA.

Accordingly, the Court finds that the EFAA does not render the parties' Arbitration Agreement unenforceable because Plaintiff has not "alleg[ed] conduct constituting a sexual harassment dispute" pursuant to 9 U.S.C. § 402(a).

**B. The Arbitration Agreement**

When a court is asked to decide whether a valid arbitration agreement exists, it must first determine whether to use the Rule 12(b)(6) or Rule 56 standard of review. *See Guidotti*, 716 F.3d at 776. "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Id.* (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). Further, even where an agreement to arbitrate is not explicitly mentioned on the face of the complaint and is not attached as an exhibit to the complaint, a court may properly consider the agreement under Rule 12(b)(6) if it is integral to or explicitly relied upon in the complaint or has been incorporated by reference into the complaint based on plaintiff's allegations. *See, e.g.*, *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014);

*George v. Midland Funding, LLC*, No. 18-15830, 2019 WL 2591163, at *3 (D.N.J. June 25, 2019); *Stacy v. Tata Consultancy Servs., Ltd.*, No. 18-13243, 2019 WL 1233081, at *5 (D.N.J. Mar. 14, 2019).

The Third Circuit has provided that it is inappropriate to consider a motion to compel arbitration under a Rule 12(b)(6) standard in two instances: (i) "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or" (ii) "if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Guidotti*, 716 F.3d at 776. Under either scenario, "the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Id.* at 774 (internal quotation and citation omitted). "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.* at 776; *see Discovery House v. Advanced Data Sys. RCM, Inc.*, No. 19-21602, 2020 WL 6938353, at *4 (D.N.J. Nov. 25, 2020).

Pursuant to *Guidotti*, the Court cannot decide Defendants' Motion on a Rule 12(b)(6) standard and without discovery because the Complaint lacks the requisite clarity to establish that the parties agreed to arbitrate Plaintiff's claims. The Complaint does not reference, attach, or rely on the Arbitration Agreement that Defendant cites. Rather, the Arbitration Agreement was filed for the first time in connection with Defendants' Motion. (*See* Arb. Agr.). Further, the Arbitration Agreement is not integral to or relied upon in the Complaint nor is it incorporated by reference in the Complaint. Plaintiff's claims do not arise under the Arbitration Agreement. Nor do Plaintiff's allegations, "turn on the 'terms and conditions' of" an agreement that "contains the subject arbitration provision." *George*, 2019 WL 2591163, at *3. Rather, Plaintiff's claims stem from Defendants' alleged discrimination and retaliation in violation of the NJLAD. (Compl. ¶¶ 43–79).

Therefore, evaluating the motion under Rule 56, rather than 12(b)(6), is proper. *See Guidotti*, 716 F.3d at 776.

The Court finds that here, as in *Guidotti*, a "restricted inquiry into factual issues" will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant "must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity" of the arbitration agreement. *Guidotti*, 716 F.3d at 774; *see also Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018) (denying motion to compel arbitration where the agreement, arbitration provision, and class action waiver were not referenced in the complaint and raised for the first time in defendant's motion); *Sauberman v. Avis Rent a Car Sys., L.L.C.*, No. 17-0756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (denying motion to compel arbitration without prejudice and ordering limited discovery where the complaint did not establish on its face that the parties agreed to arbitrate).

Accordingly, the Court will deny Defendants' motion without prejudice and will order the parties to conduct limited discovery on the issue of arbitrability. Following limited discovery, Defendants may file a renewed motion to compel arbitration, which the Court will review under the Rule 56 standard. *See Lepore v. Selectquote Ins. Servs. LLC*, No. 22-1753, 2022 WL 17093110, at *3 (D.N.J. Nov. 21, 2022).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration or Dismiss is **DENIED** *without prejudice*. An appropriate Order follows.

Dated: October 2, 2026

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**